**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MARQUIS MOORE,<br>   *Plaintiff* | § § § | |
| -vs- | § § | SA-24-CV-01150-XR |
| GREEN DOT BANK,<br>   *Defendant* | § § § § § | |

**<u>ORDER</u>**

 Before the Court is Defendant Green Dot Bank's ("Green Dot") Motion to Stay Proceedings and Compel Arbitration (ECF No. 11), Plaintiff Marquis Moore's response in opposition (ECF No. 14), and Green Dot's Reply (ECF No. 15). Upon careful consideration, the Court issues the following order.

**BACKGROUND**

 In August of 2019, Plaintiff Marquis Moore purchased and activated a Walmart Visa MoneyCard ("MoneyCard") at a Walmart in San Antonio, Texas. ECF No. 14-1 at ¶ 4; ECF No. 11 at 1. Moore contends he activated the card by calling a number located on the back of the card. ECF No. 14-1 at ¶ 8. Moore continued to use the card until September 2023 at which time he alleges that he fell victim to a scam that resulted in the loss of over $2,800 through a series of unauthorized transactions. *Id*. at ¶¶ 17–19. Moore alleges that despite multiple attempts to resolve the matter with Green Dot, he has been unable to access his funds, and the account has been closed. *Id*. at ¶¶ 21–29.  In August of 2024, Moore filed this lawsuit against Green Dot in the 57th District Court, Bexar County, Texas, alleging violations of 15 U.S.C. § 1693 (Electronic Fund Transfer Act), conversion, fraud, and the Texas Deceptive Trade Practices Act for issues related to the

unauthorized electronic transactions on his prepaid debit card and the subsequent closure of his prepaid debit card account. ECF No. 1-2. Green Dot subsequently removed the case to this Court based on Moore's claims under the Electronic Fund Transfer Act. (ECF No. 1). The instant motion was filed on January 15, 2025. ECF No. 11. Defendant bases its motion on the arbitration agreement found in the terms and conditions of the cardholder agreement. *Id*. Ex. A. at ¶19. Defendant moves this Court to compel Plaintiff into binding arbitration and stay the case as the arbitration proceeds. ECF No. 11. Plaintiff filed his Response in Opposition on February 7, 2025, (ECF No. 14) and Defendant filed its Reply on February 14, 2025. ECF No. 15.

## DISCUSSION

## I. LEGAL STANDARD

The United States Congress enacted the Federal Arbitration Act ("FAA") in response to widespread judicial hostility to arbitration. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012). The Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This provision "reflect[s] both a 'liberal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); then quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this*

claim is covered by the arbitration agreement."[1] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden of proving that the agreement is invalid. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citation omitted).

Whether the parties entered a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202; *see Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.").[2]

## II. Analysis

### A. Motion to Compel Arbitration

The Plaintiff contends he did not agree to the arbitration agreement, and thus is not bound by the arbitration agreement, because he avers that he never read, signed, or was advised of the terms and conditions of the cardholder agreement or the arbitration agreement. ECF No. 14-1 at ¶ 13.

---

[1] Plaintiff does not challenge that his claims are within the scope of the arbitration agreement. Accordingly, the Court focuses on whether a valid, enforceable arbitration agreement exists.

[2] The parties dispute whether Utah or Texas law governs Plaintiff's claims. "In determining which state's substantive law controls, the courts apply the choice-of-law principles of the forum state"—in this case, Texas. *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 241 (5th Cir. 1993) (citing *Trizec Properties, Inc. v. United States Mineral Products Co.*, 974 F.2d 602, 604 (5th Cir. 1993). "Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to valid choice of law clause." *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 311 (5th Cir. 2000) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). While the number of contacts is relevant in the application of 'the most significant relationship test,' the qualitative nature of those contacts controls. *See Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) (citing *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249) (5th Cir. 1990). "Relevant factors to consider under this test include 'the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered.'" *Colony Ins. Co. v. Emerald Valley Villas Homeowners' Ass'n, Inc.*, No. 3:19-CV-02487-L-BT, 2021 WL 8014528, at *3 (N.D. Tex. Feb. 8, 2021), *report and recommendation adopted*, No. 3:19-CV-2487-L, 2021 WL 8014664 (N.D. Tex Mar. 15, 2021) (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003)). Plaintiff Moore purchased the Money Card in San Antonio, Texas in August of 2019 (ECF No. ECF No. 14-1 at 1). Moore asserts he lived in San Antonio at the time of the purchase of the Money Card and currently resides in Bexar County, Texas (ECF No. 1-2 at ¶ 5). The parties agree that Defendant Green Dot is a Utah corporation. *Id.* at ¶ 6. The parties provide no other facts for the Court to consider in making a determination of which state law governs using the most significant relationship test. The minimal facts provided favor a finding that Texas law applies.

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012). An arbitration agreement is enforceable when a party receives notice of the policy and accepts it. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006); *see In re Poly-Am., L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (explaining that an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state).

In support of Green Dot's motion, it provides the affidavit of Sean Monahan, Green Dot's Senior Manager for Customer Support, along with the cardholder agreement containing the arbitration agreement, as evidence that the Plaintiff received notice of the policy and accepted the agreement. ECF 11-1. Monahan provides that Green "purchased and activated" the MoneyCard in August of 2019. *Id*. at ¶ 5. Monahan further avers that the MoneyCard packaging instructs the purchaser to "see additional fees, terms, and conditions at WalmartMoneyCard.com" and that the terms and conditions found on the website "comprise the agreement between Green Dot and the MoneyCard customer." *Id*. at ¶ 6. Monahan also provides that "MoneyCard accounts are subject to a written card agreement . . . setting forth the applicable terms and conditions for the accounts." *Id*. at ¶ 7. Attached to Monahan's Affidavit as Exhibit 1 is a copy of a cardholder agreement containing the arbitration agreement that Monahan avers the Plaintiff agreed to when he opened the account. *Id*. at ¶ 8; *Id*. at 6–63.

In his declaration, Moore denies that Green Dot informed him of the arbitration agreement when he activated his account. ECF No. 14-1 at ¶ 13. However, Moore does not dispute that Green Dot provided notice on the card packaging that additional terms and conditions comprise the

4

agreement between Green Dot and the cardholder. Moore declares that "[w]hen I called Green Dot it did not inform me of any arbitration agreement and its representative did not ask me if I had knowledge of, or reviewed the terms and conditions for the account before she activated it." ECF No. 14-1 at ¶ 11. Next, Moore denies that "Green Dot *confirmed* I was aware of, or had read, the terms and conditions of the card or the arbitration agreement before it activated my account over the phone." This appears to be a close call; however, in his own declaration, Moore does not deny that Green Dot provided notice on the MoneyCard packaging that terms and conditions applied and, more importantly, Moore does not declare that he had no knowledge of the terms and conditions applicable to the card—he merely declares that Green Dot did not advise him of the terms when he called to activate the card and declares that Green Dot did not confirm whether he was aware of the terms. Green Dot provided evidence that the card packaging contained a notice that applicable terms and conditions existed and further averred that those terms comprise the agreement between Green Dot and the MoneyCard customer.

Moore next denies "agreeing to arbitrate my claims with Green Dot." ECF No. 14-1 at ¶ 12. However, Moore does not dispute he used the MoneyCard. To the contrary, Moore declares that he activated the card in August of 2019 and used the card from August 2019 to September 2023 . . . "to pay all of my bills." ECF No. 14-1 at ¶¶ 9, 16. The Cardholder Agreement states "[[y]our account is being made available and priced by the Bank on the basis of your acceptance of the following arbitration provision. By opening your account, you acknowledge that you are giving up the right to litigate Claims . . . and you hereby knowingly and voluntarily waive the right of all Claims subject to this agreement." ECF No. 11-1 at ¶ 19(a). Further, "[t]here is no requirement under the FAA or Texas law that an arbitration agreement be signed so long as it is written and

5

agreed to by the parties. *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 301 (Tex. App.—San Antonio 2008) (citation omitted).

Under the plain terms of the cardholder agreement, the activation and use of the MoneyCard constitutes acceptance of the arbitration agreement. Exhibit 1 at ¶ 19 ("[b]y opening your account, you acknowledge that you are giving up the right to litigate Claims (as defined below) if either party elects arbitration of the Claims . . . You further acknowledge that you have read this arbitration provision carefully [and] agree to its terms.").

"A party may be bound by an agreement even in the absence of a signature, provided that the actions of the parties reflect a mutual intent to be bound." *Stinger v. Chase Bank, USA, NA*, 265 F. App'x. 224, 227 (5th Cir. 2008) (per curiam) (citation omitted). Likewise, a party may be bound by an agreement even in the absence of actual delivery of the agreement, provided that "the part[y] manifest[s] an intent through [his or her] actions and words that the contract become effective." *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted). In the context of a credit card, courts have determined that even if the party does not sign the credit card agreement and even if the credit card agreement is not delivered to the party, a party is bound by the terms of the credit card agreement if the party uses the card. *Stinger*, 265 F. App'x at 225, 227; *Winchek*, 232 S.W.3d at 202–04. "Use of a credit card constitutes manifestation of an intent to be bound by the credit card agreement." *Brown v. Federated Cap. Corp.*, 991 F. Supp. 2d 857, 861 (S.D. Tex. 2014) (citing *Ghia v. Am. Express Travel Related Servs. Co.*, No. 14-06-653-CV, 2007 WL 2990295, at *3 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet.) (mem. op.).

The undisputed evidence here shows that Moore activated and used the MoneyCard. Because Moore activated and used the MoneyCard, he manifested an intent to be bound by the arbitration agreement, and accordingly he is bound by the terms of the arbitration agreement.

In sum, the evidence shows that Green Dot provided Moore notice on the MoneyCard packaging that terms and conditions existed. The evidence shows that those terms and conditions contain an arbitration agreement, and, under the plain terms of the cardholder agreement, the arbitration agreement is accepted upon the activation and use of the card. The evidence establishes that Moore activated and used his MoneyCard, constituting agreement to the terms and conditions of the card, including the arbitration agreement. Because Moore was provided notice of the arbitration agreement and agreed to the arbitration agreement, the arbitration agreement is valid.

### B. Motion to Stay Proceedings Pending Arbitration

Green Dot asks the Court to stay this action pending arbitration. (Mot. Compel, ECF NO. 11 at 14). The Federal Arbitration Act provides that a federal court should stay a civil action upon finding that an issue is referable to arbitration. 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings*." Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, the proceedings are **STAYED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Stay the Case and Compel Arbitration (ECF No. 11) is **GRANTED**. This matter is hereby **STAYED** pending arbitration proceedings.

The Court finds this case is appropriate for administrative closure pending arbitration proceedings. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2014) ("District courts frequently make use of this device to remove from their pending cases suits which are

temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . . .").

The Clerk's office is therefore **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request or on the Court's own motion. Parties may continue to file motions and documents in the case. The Parties shall provide the Court with an update on the status of this case on or before **August 5, 2025,** and **every ninety (90) days thereafter**.

It is so **ORDERED**.

**SIGNED** this 5th day of May, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE